IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SHANNON D. WREN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case. No. 23-3091-JWB-GEB |
| ) | |
| LT. CHRISTOPHER BOWLING, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' MOTION TO STAY**

Defendants Lieutenant Christopher Bowling, of the Kansas Highway Patrol, and the State of Kansas, through Assistant Attorney General Matthew L. Shoger, respectfully request that this Court stay the case under *Younger* abstention until the state-court criminal proceedings have completed. Defendants state the following in support.

Although it remains unclear in this circuit whether *Younger* abstention is jurisdictional in nature, *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 523 n.32 (10th Cir. 2023), the *Younger* abstention argument may only be waived expressly, by the state voluntarily insisting on a federal forum. *Kingston v. Utah Cnty.*, 161 F.3d 17 (table opinion), 1998 WL 614462, at *3 & n.8 (10th Cir. Sept. 8, 1998) (citing *Ohio Civil Rts. Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986) and *Morrow v. Winslow*, 94 F.3d 1386, 1390 (10th Cir. 1996)). Here, no such express and voluntary waiver has been made, so the *Younger* abstention argument in this motion should be resolved by the Court.

Under *Younger*, "a federal court must abstain from deciding a case otherwise within the scope of its jurisdiction in certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Graff*, 65 F.4th at 522 (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) and *Younger v. Harris*, 401 U.S. 37, 43

(1971)). "*Younger* abstention applies to three categories of state cases: (1) state criminal prosecutions, (2) civil enforcement proceedings, and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* "*Younger* requires that a federal court refrain from hearing an action over which it has jurisdiction when the federal proceedings would (1) interfere with [such] an ongoing state judicial proceeding (2) that implicates important state interests and (3) affords an adequate opportunity to raise the federal claims." *A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1267 (10th Cir. 2002). When the ongoing state judicial proceeding is a criminal case, the important state interest is in the state "carrying out the important and necessary task of enforcing its criminal laws." *New Orleans Pub. Serv., Inc., v. Council of the City of New Orleans*, 491 U.S. 350, 365 (1989). "Once a court finds that the required conditions are present, abstention is mandatory." *Ingram*, 275 F.3d at 1267.

"Even though the original *Younger* holding was applied to a claim for injunctive relief, the Tenth Circuit has expanded the doctrine to include monetary relief." *Lawrence v. Wright*, No. 22-3203-JWL, 2022 WL 16527245, at *2 n.2 (D. Kan. Oct. 28, 2022) (citing *D.L. v. United Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004)). It applies to "claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding." *D.L.*, 392 F.3d at 1228.

> Damages suits that turn on a constitutional challenge to pending state proceedings implicate the reasons for *Younger* abstention as much as equitable or declarative relief actions because to determine whether the federal plaintiff is entitled to damages . . . the district court must first decide whether a constitutional violation has occurred.

*Gilbertson v. Albright*, 381 F.3d 965, 979 (9th Cir. 2004) (cited approvingly by *D.L.*, 392 F.3d at 1228). Although normally *Younger* abstention leads to dismissal, for claims for monetary

2

damages, the claims should be stayed rather than dismissed because claims for monetary relief cannot be redressed in the state proceedings and dismissal of the claims could cause statutes-of-limitations issues. *D.L.*, 392 F.3d at 1228 (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996)) (should be stayed rather than dismissed); *Strepka v. Miller*, 203 F.3d 836 (table opinion), 2000 WL 121494, at *1 (10th Cir. Feb. 1, 2000) (citing *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988)) (because the monetary claims cannot be redressed in the state proceedings); *Deakins*, 484 U.S. at 203 n.7 (because of statute of limitations issues); *Wright v. Henry*, No. 20-3079-SAC, 2020 WL 5819682, at *3 (D. Kan. Sept. 30, 2020) (citing *Deakins* and *D.L.*) (because of both reasons).

Regarding the preclusive effect a claim for monetary relief could have, "[a] civil judgment may support issue preclusion against the government in a later criminal prosecution." 18B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4474 & n.12 (3d ed. Apr. 2023 update) (citing *Yates v. United States*, 354 U.S. 298, 335-36 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978)). Basically, the failure to prove a fact by a preponderance of the evidence in a civil case can preclude an attempt to prove the same fact beyond a reasonable doubt in a criminal case. *Id.* at n.12 (citing *United States v. Egan Marine Corp.*, 843 F.3d 674, 678-79 (7th Cir. 2016)). For a civil judgment to support issue preclusion against the government in a later criminal prosecution, "all of the ordinary issue-preclusion requirements must be met." *Id.* Federal common law governs the preclusive effect of federal court judgments. *Johnson v. Spencer*, 950 F.3d 680, 708 (10th Cir. 2020) (citing *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008)). The affirmative defense of issue preclusion (collateral estoppel) bars the re-litigation of an issue of law or fact after it is determined on the merits by a valid, final judgment. *Keller Tank Servs. II, Inc. v. Comm'r*, 854 F.3d 1178, 1193 (10th Cir.

2017). Under federal common law, issue preclusion by a federal civil judgment applies when:

> (1) the issue previously decided is identical to the present one; (2) the prior action was finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party or in privity with a party to the previous adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the previous adjudication.

*Id.* "The litigated issue must also be essential to the judgment." *Id.*[1]

"*Younger* governs whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Ingram*, 275 F.3d at 1272. Accordingly, *Younger* abstention is appropriate when a plaintiff who is charged with fleeing or attempting to elude a police officer brings a damages claim for excessive force due to being shot by a police officer when the plaintiff says that despite the plaintiff holding a weapon he had not attacked the officers or "displayed any threatening mannerisms." *Henry*, 2020 WL 5819682, at *1, *3 (citing *Ingram*, 275 F.3d at 1272). This is because "resisting or attempting to evade arrest is one of the factors to be considered in an excessive force claim" in a civil lawsuit, so the question of whether the plaintiff is criminally guilty of attempting to evade the officer is intertwined with the question in the civil lawsuit of whether the officer used excessive force. *Id.* at *3 (citing *Graham v. Connor*, 490 U.S. 386, 396

---

[1] The elements are the same for issue preclusion by federal *criminal* judgments. *See Thompson v. Platt*, 815 F. App'x 227, 234 (10th Cir. 2020) (listing the same numbered elements and also mentioning the same essentiality requirement); *see also United States v. Koerber*, 10 F.4th 1083, 1100-01 (10th Cir. 2021) (upholding the essentiality requirement). But the absence of appellate review of criminal acquittals calls for "guarded application" of preclusion by criminal judgments that are adverse to the government because the government cannot appeal adverse judgments on the merits. *Koerber*, 10 F.4th at 1100 n.8 (citing *Bravo-Fernandez v. United States*, 580 U.S. 5, 10 (2016)) (saying this is an "important distinction" between how issue preclusion applies for civil and criminal judgments); *see also Thompson*, 815 F. App'x at 234 (saying issue preclusion applies "in a civil case to preclude relitigation of an issue *decided in favor of the prosecuting authority* in a prior criminal case" (emphasis added)).

(1989)); *see also Graham*, 490 U.S. at 396 (listing as factors for excessive force claims "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight").

Here, Wren is currently facing active charges related to fleeing law enforcement officers and resisting arrest on August 19, 2020. *State v. Wren*, No. 2020-CR-000362 (Kan. 2d Jud. Dist. Ct., Jackson Cnty.) (docket) [hereinafter "Criminal Case Docket Sheet"] (attached as Exhibit A).[2] The shooting complained of occurred during that same incident on August 19, 2020. (*See* Doc. 22 at 2.) Specifically, Wren has been charged with fleeing or attempting to elude law enforcement officers by engaging in reckless driving under K.S.A. 8-1568(b)(1)(C) and interference with law enforcement officers by obstructing, resisting, or opposing felony warrant service or execution under K.S.A. 21-5904(a)(3), (b)(5)(A), along with two related property crimes. Criminal Case Docket Sheet. Although Wren requests only monetary damages[3] (Doc. 22 at 7-8), a judgment for Wren in this case would have preclusive effects on the facts for his state court criminal proceedings.

At least some of the issues to be decided would be *identical* for purposes of issue preclusion. Wren brings federal claims for excessive force[4] in which he claims that he

---

[2] The Court can take judicial notice of court records in any related court proceedings, including state court proceedings. *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010). Defendant has attached the relevant docket sheet for the state-court criminal proceedings as Exhibit A.

[3] Wren also demands that criminal charges be brought against Lt. Bowling (Doc. 22 at 8), but that is not an available form of relief. This federal Court does not have authority to bring criminal charges, especially state-law criminal charges, against Lt. Bowling as Wren demands. However, this demand by Wren further demonstrates the interconnectedness between the criminal and civil dimensions of the case.

[4] Wren includes as causes of action the Fourth, Eighth and Fourteenth Amendments, and, separately, "excessive force." (Doc. 22 at 4-6.) Wren's federal claim should be considered to be an excessive force claim under the Fourth Amendment:
  "Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and

5

surrendered and "complied with officers demands" (so he was allegedly *not* fleeing, obstructing, resisting, or opposing arrest at that time), he claims that he held his knife only to his own throat and he was "no threat to no one but myself" (so he was allegedly not a threat to the hostage), he claims he was "several yards from officers" and "no threat to no one but myself" when he was shot (so he was allegedly not a threat to the officers or the hostage at that time), and was about to throw his knife down when he was shot (which further implies he was not resisting arrest at that time). (Doc. 22 at 2-3; *see also* Doc. 1 at 2-3.) Naturally, whether a suspect poses an immediate threat to the safety of the officers or others is also pertinent to whether the suspect was resisting arrest (such as through use of force, threats of force, or imminent use of force). Because whether a suspect poses an immediate threat to the safety of the officers or others and whether the suspect was actively resisting or attempting to evade arrest are factors to be considered in an excessive force claim, *Graham*, 490 U.S. at 396, the facts of Wren's state-court criminal charges (for fleeing and obstructing/resisting/opposing arrest) are intertwined with the facts of his current federal claim for excessive force. For Wren's current federal claim to be successful, the government would have to fail to show by a preponderance of the evidence facts regarding whether Wren posed an immediate threat to the safety of the officers or others and whether Wren was resisting or attempting to evade arrest, a *final judgment* of which may preclude an attempt to prove those facts beyond a reasonable doubt in a criminal case.

---

> Fourteenth Amendments, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force. . . . When an excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment."

*Vette v. Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021); *see also Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("apprehension by the use of deadly force is a seizure subject to . . . the Fourth Amendment").

Wren has an *adequate opportunity* (as necessary for *Younger* abstention to apply) to challenge the facts regarding resisting and attempting to evade arrest in the criminal trial (including whether he posed a threat to the safety of the officers or others) when responding to those charges. In fact, he has already started doing by pleading "not guilty." Criminal Case Docket Sheet. Since Wren has pled "not guilty" to the criminal charges in state court, it is reasonable that Wren may attempt to argue in this civil case too that he did not flee law enforcement officers or attempt to resist arrest in general, so this civil case could have preclusive effects on related facts that could be presented at trial in the criminal case. Even if Wren does not deny in this case that he fled law enforcement officers and resisted arrest in general, the factual allegations he makes in this case – including that he "had already given up and surrender[e]d" when he was shot (Doc. 1 at 3; *see also* Doc. 22 at 2 ("at the end I complied with officers demands")) – would at least involve the duration and severity of any resistance to arrest, which would likely affect sentencing. If Wren truly gave up and surrendered as he alleges, then he may receive a more lenient sentence than if the criminal case's facts show that he resisted until the end. Additionally, challenging that he was shot is challenging the seizure of his person – that is, his arrest – *see Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("apprehension by the use of deadly force is a seizure subject to . . . the Fourth Amendment"), so this case could have preclusive effects regarding the admissibility of evidence obtained following Wren's arrest. Wren has an adequate opportunity to challenge the constitutionality of his arrest in the criminal case when challenging the admissibility of such evidence. Therefore, many of the same factual issues arise in the criminal case as in the civil case, whether for motions in limine, the trial, or sentencing.

As discussed above, to find for Wren in this present civil case, the Court would have to make factual findings against the government regarding whether Wren was evading or resisting

7

arrest at the time he was shot, including regarding whether Wren posed an immediate threat to the safety of the officers or others at that time. Thus, at least those facts would be *essential* to any potential civil judgment for Wren here.

*Privity* – although not entirely clear – may exist for purposes of issue preclusion. In the reverse scenario, criminal acquittals cannot give rise to issue preclusion in § 1983 civil actions against law enforcement officers because the officers are not considered in privity with the state, as they would not have controlled the criminal case. *Novitsky v. City of Aurora*, 491 F.3d 1244, 1252 n.2 (10th Cir. 2007) (applying this rule with regard to a federal criminal proceeding); *see also Kinslow v. Ratzlaff*, 158 F.3d 1104, 1106 (10th Cir. 1998) (saying that privity was lacking because officers lacked control over the prior criminal case); *McCoy v. Miller*, 646 F. App'x 701, 704 n.4 (10th Cir. 2016) (applying the rule with regard to a Kansas criminal proceeding). But § 1983 civil judgments against officers could potentially give rise to issue preclusion against the state in a criminal prosecution because the state may be in privity with the officer when, as here, the state controlled the officer's defense in the civil action. *See Dish Network, LLC v. Ghosh*, 752 F. App'x 589, 594 (10th Cir. 2018) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 895 (2008)) ("a nonparty is bound by a judgment if [the nonparty] 'assumed control' over the litigation in which that judgment was rendered"); K.S.A. 75-4360 (discussing control by the attorney general of defense against civil actions brought against officers or troopers of the highway patrol); *see also* K.S.A. 75-6108(a)(1), (e) (discussing defense of state employees in general); K.S.A. 75-6116(a)(1) (same).

For this same reason – that the state controls the officer's defense in the civil action – the state would have a *full and fair opportunity* to litigate the relevant issues in the federal civil case. So all of the elements for issue preclusion would then be met.

Therefore, because of the very real possibility of this Court's judgments having a preclusive effect on the state-court criminal proceedings – "the prospect of undue interference with state proceedings," *Graff*, 65 F.4th at 522 – this case qualifies for *Younger* abstention. And because the relief requested is monetary, the case should be stayed rather than dismissed.

If the Court stays the federal claims and thus refrains from actively exercising its jurisdiction over those claims, then it should also refrain from actively exercising supplemental jurisdiction over state-law tort claims, such as "negligence" (*see* Doc. 22 at 6),[5] and stay those claims as well. What is more, any state-law tort claims would necessarily be based on the same underlying events – because otherwise supplemental jurisdiction would not apply and also because Wren has not provided any different facts for those claims – so the elements for issue preclusion would also then be met for the relevant fact determinations for those claims, further justifying staying any state-law tort claims.

For these reasons, Defendants request that the Court stay this case under *Younger* abstention until the ongoing state-court criminal proceedings have completed.

        Respectfully submitted,

        OFFICE OF ATTORNEY GENERAL
        KRIS W. KOBACH

        */s/ Matthew L. Shoger*
        Matthew L. Shoger, KS No. 28151
        Assistant Attorney General
        120 SW 10th Avenue, 2nd Floor
        Topeka, Kansas 66612-1597
        matt.shoger@ag.ks.gov
        (785) 296-2215
        Fax: (785) 291-3767
        *Attorney for Defendants*

---

[5] Many of the counts listed by Wren do not appear to be actual legal causes of action, but appear to be buzzwords associated with tort law, which is an area generally governed by state law.

**CERTIFICATE OF SERVICE**

       I hereby certify that on this 21st day of September, 2023, the foregoing document was filed with the clerk of the court by using the CM/ECF system, with a copy to be served by means of first-class mail on the 22nd day of September, 2023, postage prepaid, addressed to:

Shannon D. Wren
Jackson County Jail
210 US Hwy 75
Holton, KS 66436
*Plaintiff, pro se*

                                                  */s/ Matthew L. Shoger*
                                                  Matthew L. Shoger
                                                  Assistant Attorney General