IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SHANNON D. WREN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 23-3091-JWB-GEB |
| ) | |
| LT. CHRISTOPHER BOWLING, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Defendants Lt. Christopher Bowling, of the Kansas Highway Patrol, and the State of Kansas ("Defendants"), respectfully request, through Assistant Attorney General Matthew L. Shoger, that this Court dismiss several claims against them under Fed. R. Civ. P. 12(c). Defendants state the following in support.

## NATURE OF THE CASE

Plaintiff Shannon D. Wren alleges that on August 19, 2020, he fled police, ended up in the woods, and had a standoff with police officers while he wielded a knife. (Doc. 22 at 2-3.) He alleges that during the standoff Wren wielded his knife "several yards from officers," at which point the standoff concluded with Wren being allegedly wrongfully shot by Lt. Christopher Bowling of the Kansas Highway Patrol. (Doc. 22 at 2-3.)

Wren filed this lawsuit on March 31, 2023. (Doc. 1.) He filed his Amended Complaint ("Complaint") on August 31, 2023. (Doc. 22.) He requests monetary damages "plus criminal charges brought against defendent [sic] for assault [and] attempted murder." (Doc. 22 at 7-8.) Wren lists 14 counts as follows: (1) "4th Amendment Rights"; (2) "8th Amendment Rights"; (3) "14th Amendment Rights"; (4) "9th Amendment Rights"; (5) "Negligence"; (6) "Excessive Force"; (7) "Police Brutality"; (8) "Bodily Harm"; (9) "Personal Injury"; (10) "Officer

Misconduct"; (11) "Prejustice [sic]"; (12) "Discrimination"; (13) "Wrongful Injury"; and (14) "Abuse of Power." (Doc. 22 at 4-6.)

Defendants now bring this Motion for Partial Judgment on the Pleadings. Defendants seek dismissal of all claims except for Counts 1 and 6 as asserted against Defendant Bowling in his individual capacity for monetary relief.

The Court should dismiss claims for monetary relief against the State of Kansas and against Bowling in his official capacity for lack of subject-matter jurisdiction due to Eleventh Amendment immunity. The Court should dismiss Wren's request for a state-law criminal prosecution against Bowling for lack of subject-matter jurisdiction as beyond the authority of the federal courts. The Court should dismiss Counts 7-14 for lack of subject-matter jurisdiction (or, alternatively, for failure to state a claim) because Wren fails to identify any legal basis for these claims.

The Court should dismiss Counts 2-5 for failure to state a claim. Specifically, the Court should dismiss Wren's Eighth- and Fourteenth-Amendment claims (Counts 2 and 3) because the proper excessive-force test to apply in this case arises under the Fourth Amendment only. The Court should dismiss Wren's Ninth-Amendment claim (Count 4) because Wren's Complaint does not specify any rights under the Ninth Amendment that were allegedly violated. The Court should treat Wren's state-law negligence claim (Count 5) as a battery claim for purposes of the statute of limitations because he does not allege a separate duty owed beyond not using excessive force. And it should be dismissed because it is barred by the applicable statute of limitations.

Alternatively, the Court should dismiss any equal-protection claims for failure to state a claim because Wren does not allege that he was treated differently than anyone else. Alternatively, qualified immunity applies because it was not clearly established that Bowling's

2

conduct constituted a violation of law under any of the claims addressed in this motion. If this motion is fully granted, the only claims that will remain are Counts 1 and 6 as asserted against Bowling in his individual capacity for monetary relief.

## QUESTIONS PRESENTED

I. Does the Eleventh Amendment bar Wren's § 1983 claims for monetary relief against the State of Kansas and against Bowling in his official capacity?

II. Should Wren's request for a criminal prosecution be dismissed when federal courts lack authority to mandate prosecution for alleged state-law crimes?

III. Should Counts 7-14 be dismissed when Wren fails to identify any legal basis for these claims?

IV. Should Wren's Eighth- and Fourteenth-Amendment claims be dismissed when the proper excessive-force test for a seizure of a free citizen arises under the Fourth Amendment only?

V. Should Wren's Ninth-Amendment claim be dismissed when Wren's Complaint does not specify any rights under the Ninth Amendment that were allegedly violated?

VI. Should Wren's negligence claim should be treated as a battery claim for purposes of the statute of limitations when he does not allege a separate duty owed beyond not using excessive force?

VII. Should any state-law battery claims be dismissed when they are untimely and barred by the applicable one-year statute of limitations?

VIII. Alternatively, should any equal-protection claims be dismissed when Wren does not allege that he was treated differently than anyone else?

IX. Alternatively, is Bowling entitled to qualified immunity when his actions did not violate clearly established law of which reasonable state officers would have known?

## ARGUMENTS AND AUTHORITIES

### *Standard on Motion for Judgment on the Pleadings*

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) for lack of subject-matter jurisdiction and failure to state a claim is subject to the same standards as a motion to dismiss under Rule 12(b)(1) and 12(b)(6). 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed., Feb. 2024 update); *see also Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1101-02 (10th Cir. 2017).

### *Standard on Motion to Dismiss for Lack of Subject-Matter Jurisdiction*

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims for lack of subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Wren, as the party invoking the Court's jurisdiction, bears the burden of showing its existence. *Id*. "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018). A federal court must generally "satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

### *Standard on Motion to Dismiss for Failure to State a Claim*

On a Rule 12(b)(6) motion to dismiss, a court must accept as true all well-pleaded factual allegations in the complaint, *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), but a complaint must also contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although courts have traditionally construed *pro se* pleadings in a liberal fashion, this

4

"does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Similarly, courts do not assume the role of an advocate for the *pro se* litigant by constructing arguments or searching the record for potentially viable theories. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). And a *pro se* litigant is expected to adhere to the same rules of procedure that govern any other litigant in this circuit. *Id.*

### *Qualified Immunity Standard*

Qualified immunity protects from civil liability government officials whose actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Qualified immunity is an affirmative defense that can be raised in a motion to dismiss or in a motion for summary judgment. *Id.* (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). When a defendant raises the qualified immunity defense, it creates a presumption that the defendant is immune from suit. *Janny v. Gamez*, 8 F.4th 883, 913 (10th Cir. 2021). To overcome this presumption, the burden shifts to the plaintiff to show (1) the defendant's alleged conduct violated a federal statutory or constitutional right, and (2) that right was clearly established at the time of the alleged violation. *Id.* In other words, in order to overcome Defendant Bowling's qualified immunity, Wren must show not only that Bowling violated Wren's federally secured rights, but also that objectively reasonable officials could not have thought the conduct constitutionally permissible. *Park v. Gaitan*, 680 F. App'x 724, 738 (10th Cir. 2017) (citing *Cortez v. McCauley*, 478 F.3d 1108, 1128 (10th Cir. 2007)). "The court has discretion to decide which of the two prongs of the qualified-immunity analysis to address first." *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Federal precedent offers two avenues for determining whether challenged conduct

5

violates clearly established constitutional rights: "the plaintiff must show there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Colbruno v. Kessler*, 928 F.3d 1155, 1161 (10th Cir. 2019). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers, but in the light of pre-existing law the unlawfulness must be apparent." *White v. Pauly*, 580 U.S. 73, 79-80 (2017) (citation omitted). The Supreme Court recently re-emphasized that "the clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019). "This Court has repeatedly told courts not to define clearly established law at a high level of generality." *Id.*

I. **The Eleventh Amendment bars Wren's § 1983 claims against the State of Kansas and against Bowling in his official capacity.**

"The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). "This immunity extends to arms of the state and to state officials who are sued for damages in their official capacity." *Id.* As such, Kansas Highway Patrol officers share the state's immunity from suits against them in their official capacities. *See Counce v. Wolting*, 760 F. App'x 575, 580-81 (10th Cir. 2019). Because of the presumption that statutes do not abrogate this immunity, state agencies do not even count as "persons" amenable to suit under § 1983, and neither do state officials sued in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-67, 71 & n.10 (1989).

A narrow exception to sovereign immunity allows a plaintiff to seek prospective relief against a state official for ongoing violations of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). But the Eleventh Amendment bars claims for "retrospective declaratory

6

relief" against state officials. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004). "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Williams*, 928 F.3d at 1212.

Here, Wren requests monetary damages (Doc. 22 at 7-8), which are barred by the Eleventh Amendment as asserted against the State of Kansas and as asserted against Bowling in his official capacity. Therefore, Wren's claims for monetary relief against the State of Kansas and against Bowling in his official capacity should be dismissed for lack of subject-matter jurisdiction due to Eleventh Amendment immunity.

### II. **Wren's request for a criminal prosecution should be dismissed because federal courts lack authority to mandate prosecution for alleged state-law crimes.**

Wren demands that criminal charges be brought against Lt. Bowling (Doc. 22 at 8), but that is not an available form of relief. This federal Court does not have authority to order criminal charges, especially state-law criminal charges, to be brought against Lt. Bowling as Wren demands. *See Blake v. Williams*, No. 23-3186-JWL, 2024 WL 196751, at *1 (D. Kan. Jan. 18, 2024) (citing *State ex rel. Rome v. Fountain*, 234 Kan. 943, 945 (1984) and *Maine v. Taylor*, 477 U.S. 131, 136 (1986)) ("the Court is not authorized to direct state or federal prosecutorial authorities to bring a criminal case against any of the defendants"). Therefore, Wren's request for a criminal prosecution should be dismissed for lack of subject-matter jurisdiction.

### III. **Defendants are entitled to dismissal of Counts 7 through 14 because Wren fails to identify any legal basis for these claims.**

"Reading a *pro se* complaint liberally does not mean speculating about what might have been alleged. The court cannot exercise subject matter jurisdiction over a claim which does not exist." *Oltremari by McDaniel v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1351 (D. Kan. 1994). When a plaintiff's "self-styled claims are not recognized causes of action," the duty to

construe the pleadings of a *pro se* litigant liberally "neither compels nor permits" a federal court to act as a plaintiff's advocate or to "manufacture claims he has not presented." *Watkins v. Mer, Arn, Per, Inc.*, 188 F.3d 520 (table opinion), 1999 WL 603795, at *1 (10th Cir. Aug. 11, 1999).

Here, Wren cites no legal basis for Counts 7 through 14, Wren provides no explanation of how the facts relate to these counts, and these counts do not appear to name any existing causes of action under federal or Kansas law. Rather, these counts appear to be simply conclusory allegations used to characterize the alleged facts. Therefore, Counts 7 through 14 should be dismissed for lack of subject-matter jurisdiction because the court cannot exercise subject-matter jurisdiction over causes of action which do not exist. Alternatively, these counts should be dismissed for failure to state a claim recognized under federal or state law. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing Fed. R. Civ. P. 8(a)(2)) (saying a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests").

Out of an abundance of caution, because the phrase "Discrimination" in Count 12 may vaguely relate to a possible equal-protection claim, Defendants address that possible claim further below in the alternative. Defendants maintain, however, that the Complaint does not assert any equal-protection claims.

### IV. Wren's Eighth-Amendment and Fourteenth-Amendment claims should be dismissed because the proper excessive-force test to apply in this case arises under the Fourth Amendment only.

Wren includes as causes of action the Fourth, Eighth and Fourteenth Amendments, and, separately, "excessive force." (Doc. 22 at 4-6.) Wren's federal excessive-force claim should be considered to be an excessive force claim under the Fourth Amendment only.

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendments, depending on where in the criminal justice system the plaintiff is at the time of the

8

challenged use of force." *Vette v. Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021). "The choice of amendment matters" because "each carries with it a very different legal test." *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010). "When an 'excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment.'" *Vette*, 989 F.3d at 1169 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)); *see also Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("apprehension by the use of deadly force is a seizure subject to . . . the Fourth Amendment"). In contrast, "prisoners already convicted of a crime who claim that their *punishments* involve excessive force must proceed under the more restrictive terms of the Eighth Amendment's 'cruel and unusual punishments' clause." *Porro*, 624 F.3d at 1325-26 (emphasis in original).

> And when neither the Fourth nor Eighth Amendment applies—when the plaintiff finds himself in the criminal justice system somewhere between the two stools of an initial seizure and post-conviction punishment—we turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities.

*Id.* at 1326; *see also Colbruno v. Kessler*, 928 F.3d 1155, 1162-63 (10th Cir. 2019). For example, the Fifth or Fourteenth Amendments generally apply to claims of mistreatment brought by "those in pretrial confinement." *Colbruno*, 928 F.3d at 1162.

Here, Wren was a free citizen who complains of "apprehension by the use of deadly force," which is a seizure subject to the Fourth Amendment. *See Garner*, 471 U.S. at 7. Wren was not a convicted prisoner at the time, so the Eighth Amendment does not apply. Wren was also not in pretrial confinement (or similar) at the time, so the Fourteenth Amendment does not apply. Therefore, Wren's excessive-force claim should be considered under the framework of the Fourth Amendment, and his Eighth-Amendment and Fourteenth-Amendment claims (Counts 2 and 3) should be dismissed for failure to state a claim.

V.  **Defendants are entitled to dismissal of Wren's Ninth-Amendment claim because Wren's Complaint does not specify any rights under the Ninth Amendment that were allegedly violated.**

The Ninth Amendment to the U.S. Constitution states, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." But "the Ninth Amendment is not an independent source of individual rights; rather, it provides a rule of construction that [courts] apply in certain cases." *Holmes v. Town of Silver City*, 826 F. App'x 678, 681 (10th Cir. 2020) (quoting *Jenkins v. Comm'r*, 483 F.3d 90, 92 (2d Cir. 2007)); *see also Zhao v. United States*, 91 Fed. Cl. 95, 99 n.4 (2010) (collecting cases and saying "the Ninth Amendment has not been judged to be a source of individual rights for purposes of stating a claim"). So a plaintiff "cannot pursue a claim for an alleged violation of the Ninth Amendment in a suit under § 1983." *Holmes*, 826 F. App'x at 682. It would be especially inappropriate to apply the Ninth Amendment to rights protected by other amendments because "the Ninth Amendment only protects those rights not otherwise 'enumerat[ed] in the Constitution.'" *Parnisi v. Colo. State Hosp.*, 992 F.2d 1223 (table opinion), 1993 WL 118860, at *1 (10th Cir. Apr. 15, 1993) (alteration in original) (quoting U.S. Const. amend. IX). And dismissal of Ninth Amendment claims can also be further appropriate when they are "vague and conclusory." *Boling v. Romer*, 101 F.3d 1336, 1340 (10th Cir. 1996).

Here, Wren does not specify any rights under the Ninth Amendment that were allegedly violated, and he only mentions the Ninth Amendment alongside the Fourth, Eighth, and Fourteenth amendments. (*See* Doc. 22 at 4-6.) So not only can Wren not "pursue a claim for an alleged violation of the Ninth Amendment in a suit under § 1983" in general, *see Holmes*, 826 F. App'x at 682, but his claim is also vague and conclusory and is attempting to inappropriately apply the Ninth Amendment to rights protected by other amendments, namely the Fourth,

Eighth, and Fourteenth Amendment's protections against excessive force. Therefore, Defendants are entitled to dismissal of Wren's Ninth-Amendment claim (Count 4) for failure to state a claim.

## VI. Wren's negligence claim should be treated as a battery claim for purposes of the statute of limitations because he does not allege a separate duty owed beyond not using excessive force.

Under Kansas law, a plaintiff alleging negligence "must distinguish his cause of action from battery to avoid its shorter statute of limitations." *Unruh v. City of Wichita*, 318 Kan. 12, 17 (2024). "Civil battery and negligence are discrete concepts in tort with different elements of proof." *Id.* at Syl. ¶ 1. The Kansas Supreme Court describes these two discrete concepts as follows:

> The law defines civil battery as the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact that is harmful or offensive. [citation omitted] In contrast, negligence requires proof that: (1) the defendant owed plaintiff a legally recognized duty; (2) the defendant breached that duty; (3) the defendant's breach of duty caused plaintiff's injuries; and (4) plaintiff suffered damages.

*Id.* at 13-14. "Labeling a claim in a pleading as an action in negligence does not alter its character when deciding the applicable limitations period." *Id.* at 14. "Substance prevails over form when a court decides a limitations period." *Id.* A negligence claim requires:

> at least one distinct element, *involving an independent breach of a standard of care beyond that of not using excessive force in making an arrest*, which may properly be analyzed and considered by the jury on its own terms apart from the intentional tort of battery and the defense of privilege.

*Id.* at 17 (emphasis in original). In other words, in a case claiming "excessive police force when making a lawful felony arrest, negligence requires establishing a separate duty owed to an individual beyond the intentional force applied." *Id.* at 30.

Here, Wren does not allege an independent breach of a standard of care beyond that of not using excessive force in making an arrest. So, as in *Unruh*, his "claims rest entirely within

11

the elements of common-law battery and do not articulate a legally recognized duty separate from the officers' application of force with the . . . intent to cause harmful or offensive contact." *Id.* at 18-19. Therefore, Wren's negligence claim (Count 5) should be treated as a battery claim for purposes of the statute of limitations. And, as the next section shows, it is untimely and barred by the applicable statute of limitations.

### VII. Defendants are entitled to dismissal of any state-law battery claims because they are untimely and barred by the applicable statute of limitations.

"[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'" *Radloff-Francis v. Wyo. Med. Ctr., Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). The plaintiff then "has the burden of establishing a factual basis for tolling the statute." *Aldrich*, 627 F.2d at 1041 n.4.

#### A. Any state-law battery claims are untimely under the applicable one-year statute of limitations.

Under Kansas law, a one-year statute of limitations applies to battery claims under K.S.A. 60-514(b). The statute of limitations for battery begins to run when the tortious conduct ends. *See EEOC v. Mico Oil Co.*, No. 87-2471-0, 1988 WL 139481, at *3 (D. Kan. Dec. 27, 1988). This statute of limitations "does not contain a discovery rule, and there is no authority that a cause of action governed by [the] statute does not accrue until discovered." *Cooper v. Home Depot*, No. 11-1006, 2011 WL 2470357, at *5 (D. Kan. June 20, 2011); *see also Kelly v. VinZant*, 287 Kan. 509, 528 (2008) (holding that a claim for battery accrues at the time of a touching even if fraud used to induce consent was not immediately discovered because "[t]he legislature has not provided an exception to or stated any circumstances extending the statute of

12

limitations for battery based upon concealment of fraud or an inability to discover the battery").

Here, Wren brings state-law battery claims, so the one-year statute of limitations from K.S.A. 60-514(b) applies. The latest allegedly tortious event Wren points to, Bowling shooting him, occurred on August 19, 2020. (Doc. 22 at 2-3.) So that date would be when Bowling would have ended his allegedly tortious conduct. *See Mico Oil*, 1988 WL 139481, at *3. Over two years passed from that date before Wren filed his initial complaint on March 31, 2023. (Doc. 1.) Therefore, unless the statute of limitations was sufficiently tolled, any state-law battery claims are barred by the applicable one-year statute of limitations.

### B. Wren has not alleged a valid basis to toll sufficiently the statute of limitations.

Wren has not asserted any basis for tolling the statute of limitations, so any state-law battery claims are time-barred and should be dismissed. Even if the court considers any tolling due to the COVID-19 pandemic, any such tolling would be insufficient to render these claims timely. The Kansas Supreme Court issued administrative orders during the COVID-19 pandemic under authority granted by K.S.A. 20-172 that tolled limitations periods and statutory deadlines between March 19, 2020 and April 15, 2021. *Centrinex, LLC v. Darkstar Grp., LTC*, No. 12-2300-EFM, 2022 WL 16833759, at *4 (D. Kan. Nov. 9, 2022). As stated above, the latest any battery claims would have accrued is August 19, 2020. Because this was during the period of tolling for COVID-19, the one-year statute of limitations for any battery claim would not have begun to run until April 15, 2021, when the period of tolling for COVID-19 ended. K.S.A. 20-172(d)(2). So the statute of limitations would have finished running for the battery claims on April 15, 2022. Wren filed his complaint almost a year after that date, on March 31, 2023. (Doc. 1.) Therefore, even considering any tolling due to the COVID-19 pandemic, any battery claims are untimely and barred by the applicable statute of limitations.

For persons such as incapacitated persons who are under legal disability when a statute of

limitations would otherwise be running, the statute of limitations in Kansas is adjusted to allow bringing the action within one year after the person's disability is removed. K.S.A. 60-515(a). Although Wren alleges that he was in a coma and on life support for a time, he also provides the amount of time he was in the hospital: "2 months." (Doc. 22 at 3.) So he would have been released by approximately October 2020, several months before the statute of limitations started running on April 15, 2021. Therefore, legal disability did not toll the statute of limitations.

Therefore, any battery claims are untimely and barred by the applicable statute of limitations, so they should be dismissed for failure to state a claim.

## VIII. Alternatively, Defendants are entitled to dismissal of any § 1983 claims based on equal protection because Wren does not allege that he was treated differently than anyone else.[1]

As the Tenth Circuit has stated:

> A fundamental tenet of equal-protection analysis is that a cognizable claim must identify a class of persons disadvantaged by the government action. In other words, government action challenged on equal-protection grounds must "affect some groups of citizens differently than others."

*Citizens for Const. Integrity v. United States*, 57 F.4th 750, 765 (10th Cir. 2023) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)). So "[t]o assert a viable equal protection claim, a plaintiff must first make a threshold showing that she was treated differently from others who were similarly situated to her." *Dalton v. Reynolds*, 2 F.4th 1300, 1308 (10th Cir. 2021). Here, Wren has not alleged that anyone else was similarly situated to him or that he was treated differently than any person. Therefore, any equal-protection claims should be dismissed for failure to state a claim.

---

[1] Out of an abundance of caution, because the phrase "Discrimination" in Count 12 may vaguely relate to an equal-protection claim, Defendants address that possible claim here in the alternative. Defendants maintain, however, that the Complaint does not assert any equal-protection claims.

### IX. **Alternatively, qualified immunity applies because it was not clearly established that Bowling's conduct constituted a violation under any of the claims addressed in this motion.**

Bowling is entitled to qualified immunity because there was no clearly established law within this Circuit, or a robust consensus of cases outside of it, that his alleged actions constituted a violation of certain laws, particularized to the facts of this case. Specifically, Wren has not shown any law that put Bowling on notice that his actions would constitute a legal violation giving rise to liability under Count 2 ("8th Amendment Rights"), Count 3 ("14th Amendment Rights"), Count 4 ("9th Amendment Rights"), Count 5 ("Negligence"), Count 7 ("Police Brutality"), Count 8 ("Bodily Harm"), Count 9 ("Personal Injury"), Count 10 ("Officer Misconduct"), Count 11 ("Prejustice [sic]"), Count 12 ("Discrimination"), Count 13 ("Wrongful Injury"), or Count 14 ("Abuse of Power"). Because qualified immunity applies, the Court should dismiss any remaining claims under Counts 2-5 and 7-14 for failure to state a claim.

For these reasons, Defendants request that the Court dismiss all claims against them except for Counts 1 and 6 as asserted against Defendant Bowling in his individual capacity for monetary relief.

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
(785) 296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

        I hereby certify that on this 15th day of May, 2024, the foregoing document was filed with the clerk of the court by using the CM/ECF system, with a copy served by means of first-class mail, postage prepaid, addressed to Plaintiff's last-known address of:

Shannon Wren
520 SW Frazier Ave
Topeka, KS 66606
*Plaintiff, pro se*

                                                */s/ Matthew L. Shoger*
                                                Matthew L. Shoger
                                                Assistant Attorney General